UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONATHON REINSCHMIDT, Individually and on Behalf of All Others Similarly Situated, | CASE NO. C12-2084-RSM |
| Plaintiff, | ORDER ON MOTIONS TO APPOINT LEAD PLAINTIFF |
| v. | |
| ZILLOW, INC. et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Movant James Atkinson's and Movants Oklahoma Firefighters Pension and Retirement System and State-Boston Retirement System's (collectively, the "Retirement Funds") motions to appoint lead plaintiff in a securities fraud class action brought against Zillow, Inc. Dkt. ## 23, 25. For the reasons that follow, the Court appoints Atkinson as the presumptively adequate lead plaintiff and directs supplemental briefing.

## II. BACKGROUND

Purchasers of Zillow, Inc. ("Zillow") common stock brought a securities class action lawsuit under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. The complaint alleges that between February 15, 2012 and November 6, 2012, Zillow issued materially false and misleading statements about its business practices and financial results, which allowed its stock to trade at artificially inflated prices. Putative class members contend that when Zillow's misrepresentations came to light, Zillow's inflated share price dropped causing substantial economic harm to investors.

One individual investor and a group of institutional investors timely move to be appointed lead plaintiff with associated lead counsel. James Atkinson is an individual represented by the law firms of Levi & Korsinsky LLP ("Levi & Korsinsky") as lead counsel and the Law Offices of Clifford A. Cantor, P.C. ("Cantor") as liason counsel. The other movant comprises the two Retirement Funds represented by the law firms of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Labaton Sucharow LLP ("Labaton Sucharow") as co-lead counsel, and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as liason counsel.

## III. DISCUSSION

**A. Governing Law**

Under the Private Securities Litigation Reform Act ("PSLRA"), private plaintiffs have twenty days from the filing of a class action securities complaint to publish a notice advising putative class members of the pendency of the action, the claims asserted, the purported class period, and the right of any class member to move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Class members have sixty days from the date of publication to move the court

for appointment as lead plaintiff. *Id.* The court then considers any motion to serve as lead plaintiff made by a putative class member. 15 U.S.C. § 78u-4(a)(3)(B)(i). The court appoints a lead plaintiff that is "most capable of adequately representing the interests of class members." *Id.*

Under PSLRA, a plaintiff is presumptively adequate to serve as lead plaintiff if she (1) either filed the complaint or moved to serve as lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) otherwise satisfies Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii).  The presumption may be rebutted if another member proves that the presumptively adequate plaintiff will not fairly and adequately represent the class or is subject to unique defenses. *Id.*

District courts must first identify the financial interests of the movants seeking to serve as lead plaintiffs to determine which has the greatest financial stake in the controversy. *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). After selecting the plaintiff with the greatest financial interest, the court looks to that plaintiff's declarations and pleadings to determine whether the movant satisfies Rule 23(a). *Id.* If the movant is both "adequate" and "typical" as contemplated by Rule 23(a), the movant becomes the presumptively adequate lead plaintiff. After the presumptive lead plaintiff is identified, the court reviews evidence presented by other plaintiffs to rebut the presumption. *Id.* If the evidence presented casts sufficient doubt on the adequacy and typicality of the presumptive lead plaintiff, the court looks to the movant with the second greatest financial interest and repeats the process. *Id.* at 731.

**B. Analysis**

   1.  <u>Movant with the Greatest Financial Interest</u>

There is no prescribed method for calculating a party's financial stake in the case. *Id.* at 730 n. 4.  However, courts "must compare the financial stakes of the various plaintiffs and determine which has the most to gain from the lawsuit," through "accounting methods that are

both rationally and consistently applied." *Id.* at 730. Courts often consider the following four factors to determine financial interest: (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate loss suffered. *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011).

Examining the first factor, Atkinson purchased the largest number of total shares. During the class period, he purchased 105,233 shares, as compared to the Retirement Funds' 31,300 total shares purchased. For the second and third factors, the Retirement Funds had both the higher number of net shares purchased and net funds expended during the class period, with the Funds purchasing 26,624 net shares compared to Atkinson's 14,600, and expending $980,062 in net funds compared to $682,415. For the final factor, Atkinson claims a higher loss amount, $268,406 as compared to the Retirement Funds' claimed loss of $234,648. Thus, two factors favor Atkinson and two factors favor the Retirement Funds.

The Retirement Funds contend their higher values for net shares purchased and net funds expended, as well as the "*de minimis*" difference between the parties' claimed loss amounts, tips the financial interest calculus in their favor. Atkinson contends that his claimed loss amount, which is $33,758 (or 14%) greater than the Retirement Funds, entitles him to presumptive lead plaintiff status. The Court agrees with Atkinson that the claimed loss amount is determinative in this case. Although the Retirement Funds contend that some courts have found that a plaintiff with a lower loss amount may nevertheless have a greater financial interest, such findings were predicated on circumstances not present here. For example, in *Frias*, this Court found that the plaintiff with a lower financial-loss amount and a greater net-shares-purchased amount had a greater financial interest. But the finding was directly related to the Court's determination that the group claiming the largest financial loss had improperly aggregated its loss amount. *Frias*,

835 F. Supp. 2d at 1074-75. Here, Atkinson is an individual with a greater loss amount; his loss is not aggregated from various investing groups like the group loss at issue in *Frias*.

Additionally, in *Permutter v. Intuitive Surgical, Inc.*, Case No. 10-cv-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011), the court determined that a plaintiff with an arguably lower claimed loss amount had a greater financial interest. The court's decision rested on two points: (1) the plaintiff with the greater claimed loss was both a net seller and net gainer during the class period, and (2) that plaintiff did not actually sustain the greatest financial loss using a more widely adopted measure of loss calculation. *Id.* at * 8 & 10-11. Again, neither circumstance is present here. Atkinson was not a net seller or gainer because he bought more Zillow shares than he sold during the class period. Moreover, the Retirement Funds do not challenge the method used to calculate Atkinson's claimed loss amount[1] and in effect concede that Atkinson's claimed approximate loss is greater. Dkt. # 31, p. 9.

Courts often consider the fourth factor, approximate losses suffered, determinative in identifying the plaintiff the greatest financial stake. *In re Diamond Foods, Inc.*, Securities Litigation, 281 F.R.D. 405, 408 (N.D. Cal. 2012); *Richardson v. TVIA, Inc.*, Case No. C-06-06304-RMW, 2007 WL 1129344 *4 (N.D. Cal. April 16, 2007) (collecting cases). Here, Atkinson's claimed loss exceeds the Retirement Funds' claimed loss by $33,758. Atkinson has not been challenged by the Retirement Funds on the grounds that his loss was improperly

---

[1] Approximate losses were calculated using the last-in, first-out ("LIFO") method. LIFO is a widely accepted method for calculating approximate loss. *Permutter*, 2011 WL 566814  at * 11 (stating LIFO is " the method favored by a majority of courts").

aggregated, that he was a net seller or gainer, or that he inflated his approximate loss calculation. Accordingly, the Court finds that Atkinson holds the greatest financial stake. [2]

2.  Rule 23 Adequacy and Typicality

Having found that Atkinson has the greatest financial interest, the court next considers whether he meets the requirements of Rule 23. On a motion to serve as lead plaintiff, the Rule 23 inquiry depends on satisfaction of the "typicality" and "adequacy" aspects of the rule. *Frias*, 835 F. Supp. 2d at 1075. In class actions, "typical" claims are those that (1) arise from the same event or course of conduct giving rise to the claims of other class members and (2) are brought under the same legal theory. *Id.* "Adequacy" requires (1) that the presumptive lead plaintiff's interests align with the class's interests, and (2) that the presumptive lead plaintiff's selected counsel are "qualified, experienced, and generally able to conduct the litigation." *Id.* at 1076 (quoting *Schonfield v. Dendreon Corp.*, Case No. C07-800-MJP, 2007 WL 2916533 at *4 (W.D. Wash. Oct. 4, 2007)).

Although the Court received scant information about Atkinson, from a facial review of moving papers it appears that he meets the typicality and adequacy requirements at the most general level. He, like other putative class members, purchased shares of Zillow stock at allegedly inflated prices and sustained a loss when the market absorbed information about Zillow's actual financial performance. Therefore his claims are typical of the class because they arise from Zillow's conduct during the class period and are brought under the same legal theory. Atkinson also meets the adequacy requirement because his interests presumably align with the class. He seeks to hold Zillow liable for the damages sustained by class members. He also

---

[2] Because the Court finds that Atkinson holds the greatest financial stake during the class period identified in the complaint, it declines to address Atkinson's argument that the class period should be contracted by one day to bolster the calculation of his financial stake.

certified his intent to serve as a willing class representative and submitted a schedule detailing his transactions during the class period. Dkt. # 24-1, pp. 2-5. Moreover, his requested lead law firm has significant experience in securities litigation. *See* Dkt. # 24-4, pp. 2-18. Thus, Atkinson makes a *prima facie* showing for the Rule 23 requirements.

   3. <u>Rebutting the Presumption</u>

   The Retirement Funds contend that Atkinson is neither a typical nor adequate lead plaintiff for two reasons. First, they argue that Atkinson is susceptible to a unique defense because his trading activities suggest that he was trading in response to minute price movements and not in reliance of Zillow's market representations. Second, they contend that Atkinson's request to be appointed lead plaintiff is entirely lawyer driven in a manner contrary to the stated policies of the PLSRA.

   The Retirement Funds point to Atkinson's trading schedule to show that Atkinson engaged in in-and-out trading and day trading, subjecting him to unique defenses. Although Atkinson held several thousand shares of Zillow stock over the course of the class period, he most often bought and liquidated shares on the same day.[3] The Funds contend that Atkinson's trading activity renders him atypical of the class because day traders rely upon daily market volatility, not a company's financial statements. Dkt. # 31, p. 13. Reliance on the fraud or misrepresentation is an essential element of a federal securities claim. *See* Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. Because trading on market volatility "belies any true reliance on company reports or even on the integrity of the stock price itself,"

---

[3] On eight of seventeen total active trading days, Atkinson bought and fully liquidated the shares purchased on that day. In seven of the remaining eleven days, Atkinson bought and liquidated shares within two days. Thus, Atkinson only bought and held shares on four active days within the class period. On his most active trading day, Atkinson made sixteen trades. *See* Dkt. # 24-2.

such behavior may subject a class representative to a unique defense. *See Tsirekidze v. Syntax-Brillian Corp.*, Case No. C07-2204-PHX-FJM, 2008 WL 942273 at *4 (D. Ariz. April 7, 2008). Thus, upon review of Atkinson's trading activity he may be subject to a unique defense that could become the focus of the litigation.

Atkinson argues that while he engaged in same-day trading, he does not fit the definition of a day trader because he held Zillow shares overnight on several occasions. Atkinson did not, however, offer any additional information about his background for the Court to consider in light of the Funds' challenge. Courts have taken different positions on whether to reject a presumptive lead plaintiff because he engaged in day-trading activity. *Compare Applestein v. Medivation Inc.*, Case No. C10-998-MHP, 2010 WL 3749406 at *3 (N.D. Cal. Sept. 20, 2010) (finding the presumption rebutted) *with In re Zinga, Inc. Sec. Litig.*, Case No. C12-4007-JSW, 2013 WL 257161 at *2 (N.D. Cal. Jan. 23, 2013) (declining to find the presumption rebutted at the lead-plaintiff-appointment stage). Here, Atkinson provided little information for the Court to assess his adequacy to serve as lead plaintiff. In addition, the Funds present a compelling argument that Atkinson may be subject to a unique defense. In light of the Court's determination that Atkinson holds the strongest financial stake and that the Funds have raised questions concerning Atkinson's typicality, the Court directs supplemental briefing on the following issue: If the Court were to appoint Atkinson and the Funds co-lead plaintiffs, could the parties jointly represent the best interests of the class? Although courts differ with respect to co-lead plaintiff arrangements between individual and institutional investors, the facts (or lack thereof) warrant further investigation. *Compare Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 673 (C.D. Cal. 2005) (rejecting request to appoint co-lead plaintiffs) *with In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003) (exercising authority to appoint both an individual and institutional

investor as co-lead plaintiffs). Atkinson has the largest financial stake and is presumptively well situated to pursue vigorous litigation on behalf of the class. However, the Funds' presence as co-lead plaintiff may insulate Atkinson from possible unique defenses levied against him to the class's detriment.

Accordingly, the parties are directed to submit supplemental briefing on March 29, 2013. The Court encourages the parties to confer and submit a joint brief, but if no consensus can be reached, simultaneous briefs will suffice. The parties shall address whether joint appointment will benefit the class, and propose an appointment for co-lead counsel that accounts for whether such appointment benefits the class. The brief shall not exceed fifteen (15) pages, but may include any necessary declarations and exhibits. The remaining issues will be addressed after consideration of the parties' supplemental brief, if necessary.

## IV. CONCLUSION

Having reviewed the motions, the responses and replies thereto, the attached declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Appointment of lead plaintiff and appointment lead counsel (Dkt. ## 23, 25) are

DEFERRED until consideration of supplemental briefing.

(2) The parties are directed to submit supplemental briefing by March 29, 2013.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

Dated this 14th day of March 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTIONS TO APPOINT LEAD PLAINTIFF - 9